UNITED STATES, Appellee

v.

Wren A. NANCE, Senior Airman
U.S. Air Force, Appellant

No. 09-0164

Crim. App. No. S31445

United States Court of Appeals for the Armed Forces

Argued April 27, 2009

Decided June 3, 2009

RYAN, J., delivered the opinion of the Court, in which EFFRON, C.J., and BAKER, ERDMANN, and STUCKY, JJ., joined.


<u>Counsel</u>


For Appellant:  Captain Michael A. Burnat (argued); Major Imelda L. Paredes (on brief); Major Lance J. Wood and Major Shannon A. Bennett.


For Appellee:  Captain Michael T. Rakowski (argued); Gerald R. Bruce, Esq., and Major Jeremy S. Weber (on brief).


Military Judge:  Charles E. Wiedie Jr.


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

A special court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas, of one specification of divers wrongful use of ecstasy, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000), and one specification of divers wrongful use of Coricidin HBP Cough and Cold Medicine (CCC), conduct prejudicial to good order and discipline, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000). The convening authority approved the adjudged sentence of a bad-conduct discharge and a reduction to pay grade E-1. In a split decision, the United States Air Force Court of Criminal Appeals (CCA) affirmed the findings and the sentence. United States v. Nance, No. ACM S31445, 2008 CCA LEXIS 347, at *5, 2008 WL 4525389, at *2 (A.F. Ct. Crim. App. Sept. 12, 2008) (unpublished).

Appellant challenges the providence of his guilty plea to the violation of Article 134, UCMJ.[1] Specifically, Appellant argues that the military judge abused his discretion in accepting Appellant's plea because the military judge failed to

---

[1] The Court granted review of the following issue:

> WHETHER APPELLANT'S PLEA OF GUILTY TO ENGAGING IN CONDUCT PREJUDICIAL TO GOOD ORDER AND DISCIPLINE WAS IMPROVIDENT BECAUSE OF A LACK OF EVIDENCE IN THE RECORD INDICATING THAT HIS CONDUCT WAS DIRECTLY PREJUDICIAL TO GOOD ORDER AND DISCIPLINE.

elicit a sufficient factual basis to establish that Appellant's conduct was prejudicial to good order and discipline in the armed forces.  We disagree.

I.

Prior to the court-martial, Appellant and the Government entered into a pretrial agreement (PTA), in which Appellant agreed, inter alia, to a stipulation of fact.  Such a stipulation, if accepted, "is binding on the court-martial and may not be contradicted by the parties thereto."  Rule for Courts-Martial (R.C.M.) 811(e).  The stipulation of fact, in relevant part, stated:

> 3.  Between 1 December 2005 and 31 May 2006, [Appellant] wrongfully used [CCC] by ingesting one box of CCC on each of five (5) separate occasions.  CCC is an over-the-counter cold medicine.  [Appellant, an E-4,] used CCC with [three Air Force E-4s, one Air Force E-3, one unknown active duty enlisted Army member, and one civilian].  [Appellant] used CCC with the intent to become intoxicated.  Each time [Appellant] took CCC, he consumed more than the maximum recommended daily dosage and did so with the intent to alter his mood or function.  [Appellant] used CCC on five (5) separate occasions at [another servicemember's] residence in Anchorage, Alaska.

> 4.  Using CCC made [Appellant] feel like another person.  It made him thirsty, his brain feel warm and tingly, and his eyesight fuzzy.  While under the influence of CCC, lights appeared more colorful to [Appellant].  His motorskills were impaired by the CCC use.  On one or more occasions, [Appellant] passed out or went into a dream-like state, from which he emerged disoriented.  The after-effects of CCC use experienced by [Appellant] were headache, dry throat, inflammation of the thyroids, and sometimes nausea.

5. [Appellant's] use of CCC was, under the circumstances, to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

6. [Appellant] knowingly used CCC by ingesting it orally. This was willfull [sic] and wrongful, in that [Appellant] had no legal justification to use CCC for the purpose of becoming intoxicated. He was not acting as an informant or undercover agent when he used CCC. He chose to use CCC of his own free will, without threats or intimidation.

Stipulation of Fact at 2, United States v. Nance, No. 09-0164 (Jan. 2, 2008).

At the court-martial, the military judge and Appellant engaged in a lengthy plea colloquy that began with a discussion of Appellant's understanding of the use and effect of the stipulation of fact, after which the military judge accepted the stipulation and admitted it into evidence. The military judge then explained to Appellant the need to establish an adequate factual basis to support each element of the offenses to which Appellant had pleaded guilty. After questioning Appellant about the specifics related to the use of CCC and why that conduct was wrongful, the military judge asked Appellant if he believed that his actions were to the prejudice of good order and discipline in the armed forces. Appellant replied "Yes, sir," after which the military judge asked Appellant to explain how his actions were prejudicial to good order and discipline. Appellant responded:

4

> Well, Your Honor, as a member of the United States Air Force, it's not in the best interests and it puts a bad image on the United States Air Force when airman [sic] or other members sit around and, you know, break the law by doing, you know, partaking of [CCC] or any other type of drugs that are illegal; that brings a bad image upon yourself and, you know, who we work for.

Transcript of Record of Trial at 41, United States v. Nance, No. 09-0164 (Jan. 7, 2008) [hereinafter Record]. The military judge asked Appellant nine additional follow-up questions about his abuse of CCC, based on the contents of the stipulation of fact. Record at 41-43. Through these questions, to which Appellant replied either "Yes, Your Honor" or "Not entirely, Your Honor," the military judge elicited Appellant's agreement that risking real physical damage from the wrongful use of CCC, misusing medication in the company of other airmen, and failing to uphold military standards impacted good order and discipline and military readiness. Id.

The military judge recessed the court-martial "out of an abundance of caution" and convened an R.C.M. 802 conference to discuss with the trial and defense counsel whether the prejudicial to good order and discipline element had been established. Record at 43-46. After the conference, the military judge announced on the record that:

> [Appellant] discussed about and met what would be conduct prejudicial to good order and discipline. He did talk about the fact that there were other members present when he was using and how the affects [sic],

5

> you know, of airmen getting together and abusing this
> would have a direct and palpable effect on good order
> and discipline, and certainly readiness as well.[2]

Record at 47.

Finally, the military judge asked trial and defense counsel two separate times whether either wanted further inquiry on the issue whether Appellant's conduct was prejudicial to good order and discipline, and both times each counsel said no.

## II.

Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2000), requires military judges to reject a plea of guilty "if it appears that [an accused] has entered the plea of guilty improvidently." To prevent the acceptance of improvident pleas, this Court has long placed a duty on the military judge to establish, on the record, the factual bases that establish that "the acts or omissions of the accused constitute the offense or offenses to which he is pleading guilty." United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969) (establishing the requirement for an on the record "Care" inquiry in guilty plea cases). If the military judge fails to establish that there is an adequate

---

[2] The military judge also found that Appellant had established that his wrongful use of CCC was "service discrediting," and that this conduct was therefore  prejudicial to good order and discipline, citing United States v. Rogers, 50 M.J. 805 (A.F. Ct. Crim. App. 1999), a case decided well before United States v. Medina, 66 M.J. 21 (C.A.A.F. 2008). This conclusion does not affect the providence of the plea with respect to the prejudicial to good order and discipline element and is not the basis for the Court's decision today.

basis in law and fact to support the accused's plea during the Care inquiry, the plea will be improvident. United States v. Inabinette, 66 M.J. 320, 321-22 (C.A.A.F. 2008); see also R.C.M. 910(e) ("The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea."). "A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion. A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea -- an area in which we afford significant deference." Inabinette, 66 M.J. at 322 (citations and quotation marks omitted).

In this case, Appellant argues that the military judge failed to elicit, from Appellant, a sufficient factual basis to establish that Appellant's conduct was to the prejudice of good order and discipline in the armed forces. Appellant asserts that the military judge's use of leading questions, to which Appellant responded with simple "Yes, Your Honor," and "Not entirely, Your Honor" answers, was insufficient under this Court's guidance in United States v. Jordan. See 57 M.J. 236, 238 (C.A.A.F. 2002) ("It is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty.").

We disagree. In this case, "'the factual circumstances as

revealed by the accused himself objectively support [his]
plea.'" United States v. Barton, 60 M.J. 62, 64 (C.A.A.F. 2004)
(quoting United States v. Davenport, 9 M.J. 364, 367 (C.M.A.
1980)). The military judge explicitly stated two reasons why
Appellant's conduct was prejudicial to good order and
discipline: (1) because Appellant's repeated gathering with
other airmen to abuse CCC with the intent of getting high would
have a direct and palpable effect on good order and discipline;
and (2) because that conduct would affect military readiness.
The factual bases underlying these findings came directly from
Appellant.[3]

The stipulation of fact established that Appellant met on
five occasions with four fellow airmen, including one of lower
rank, and one enlisted member of the U.S. Army to abuse CCC with
the intent to become intoxicated. Appellant described this
behavior in his own words during the plea colloquy, adding, "I
knew it was inappropriate for me to over medicate like that and
I knew that it was against good order and discipline." Record

---

[3] Although the stipulation of fact included a bare-bones
conclusion of law regarding the nature of Appellant's conduct,
see Stipulation of Fact at 2, Nance, No. 09-0164 (Jan. 2, 2008)
("[Appellant's] use of CCC was, under the circumstances, to the
prejudice of good order and discipline in the armed forces and
of a nature to bring discredit upon the armed forces."), nothing
in the record suggests that the military judge relied upon that
conclusion. To the contrary, the military judge independently
determined that Appellant's conduct was to the prejudice of good
order and discipline based on the facts elicited from Appellant.
See Record at 40-50.

at 32.  In regard to military readiness, the stipulation of fact established that in addition to making Appellant high, abusing CCC impaired Appellant's motor skills and sometimes made Appellant pass out or enter into a dream-like state from which he emerged disoriented.  Appellant repeated the same facts during the plea inquiry, stating that he experienced nausea, blackouts, and extremely impaired motor skills after taking CCC.

These facts legally and factually support the prejudicial to good order and discipline element of the charged violation of Article 134, UCMJ.  See, e.g., United States v. Erickson, 61 M.J. 230, 232-33 (C.A.A.F. 2005) (finding that behavior that undermined an appellant's capability and readiness to perform military duties had a direct and palpable effect on good order and discipline); United States v. Guerrero, 33 M.J. 295, 298 (C.M.A. 1991) (finding wrongful conduct that might not be criminal if performed in private to be prejudicial to good order and discipline when performed in the presence of other servicemembers).  This does not, however, address the entire thrust of Appellant's argument.

In addition to challenging the factual basis for his plea, Appellant argues that the military judge's use of leading questions transformed what would otherwise be a provident plea with a sufficient basis in law and fact into an improvident one. Again, we disagree.  Although this Court has stressed that the

use of leading questions that do no more than elicit "yes" and "no" responses during the providence inquiry is disfavored, United States v. Negron, 60 M.J. 136, 143 (C.A.A.F. 2004) (citing Jordan, 57 M.J. at 238; United States v. Sweet, 42 M.J. 183, 185 (C.A.A.F. 1995); United States v. Lee, 16 M.J. 278, 282 (C.M.A. 1983)), it has never been the law that a military judge's use of leading questions automatically results in an improvident plea. Rather, we examine the totality of the circumstances of the providence inquiry, including the stipulation of fact, as well as the relationship between the accused's responses to leading questions and the full range of the accused's responses during the plea inquiry. See Sweet, 42 M.J. at 185-86 (upholding a military judge's acceptance of a guilty plea in light of the totality of the circumstances, including the relation between the stipulation of fact and the accused's "yes" and "no" answers during the plea inquiry).

In this case, the military judge used leading questions to amplify three points that had already been established on the record: (1) the objective facts set forth in the stipulation of fact; (2) the objective facts already elicited from Appellant earlier in the plea inquiry; and (3) Appellant's explicit agreement that his conduct was prejudicial to good order and discipline in the armed forces. The military judge is required to elicit from the accused factual circumstances that

objectively support each element of the charged offense to which a plea is entered.  Barton, 60 M.J. at 64; Davenport, 9 M.J. at 367.  Determining whether those factual circumstances establish conduct that is or is not prejudicial to good order and discipline is a legal conclusion that remains within the discretion of the military judge in guilty plea cases.  See Jordan, 57 M.J. at 239 (finding whether an accused's conduct was prejudicial to good order and discipline to be a conclusion of law).

III.

Nothing in the record presents a substantial basis in law or fact for questioning the guilty plea.  See Inabinette, 66 M.J. at 322 ("[I]n reviewing a military judge's acceptance of a plea for an abuse of discretion appellate courts apply a substantial basis test:  Does the record as a whole show '"a substantial basis" in law and fact for questioning the guilty plea.'" (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991))).  Because the military judge did not abuse his discretion in accepting Appellant's plea, the decision of the United States Air Force Court of Criminal Appeals is affirmed.