# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman Basic JANE M. NEUBAUER
## United States Air Force

## ACM S32308

## 10 March 2016

Sentence adjudged 11 March 2015 by SPCM convened at Keesler Air Force Base, Mississippi. Military Judge: Matthew S. Ward (sitting alone).

Approved sentence: Bad-conduct discharge, confinement for 84 days, and forfeiture of $1,031.00 pay per month for 12 months.

Appellate Counsel for Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Lieutenant Colonel Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and SANTORO
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A military judge sitting as a special court-martial convicted Appellant, consistent with her pleas, of a total of 18 specifications (6 charges) under the Uniform Code of Military Justice: driving on base after her driving privileges had been revoked following a driving under the influence offense; wrongfully using "Spice"; making 10 false official statements, all related to a false claim that she had been sexually assaulted; possession of marijuana; use of marijuana on divers occasions (2 specifications); soliciting another Airman to make a false statement to cover up her misconduct; breaking restriction; and soliciting another Airman to aid in her breaking restriction, in violation of Articles 92, 107, 112a, and 134, UCMJ, 10 U.S.C. §§ 892, 907, 912a, 934. The military judge

sentenced Appellant to a bad-conduct discharge, confinement for 4 months, and forfeiture of $1,031 pay per month for 12 months. Pursuant to a pretrial agreement, the convening authority reduced the confinement to 84 days but otherwise approved the adjudged sentence.

On appeal, Appellant asserts that her plea of guilty to soliciting another Airman to aid her in breaking restriction was improvident and that the trial counsel's sentencing argument was improper. We disagree and affirm.

*Background*

Appellant was assigned to Keesler Air Force Base, Mississippi, for technical training. In April 2013, she agreed to work as a confidential informant for the Air Force Office of Special Investigations (AFOSI). Her primary role was to collect information regarding drug use and distribution by other Airmen.

On 25 July 2013, following an unsuccessful law enforcement operation, AFOSI told Appellant to "take the next week off." As a trainee, Appellant had to be back in the dormitory by midnight. On 26 July 2013, Appellant spent time with a permanent-party (i.e., non-trainee) Airman, had consensual sexual intercourse with him, and remained in his room until around 0130 the next morning. Meanwhile, Appellant's unit realized that she was missing and began efforts to locate her—which included multiple (unanswered) calls to her cell phone while she was with the other Airman. Appellant eventually answered one of her unit's calls and falsely told the charge of quarters (CQ) that she was in her dorm room.

Her unit continued trying to contact her. Instead of returning directly to her dorm room, Appellant went to the Biloxi Regional Medical Center. After she arrived at the hospital her unit called again and she told the CQ that she was at the hospital. When the CQ handed the telephone to a noncommissioned officer (NCO), Appellant told the NCO that she was having a rape kit done. The NCO reported the alleged sexual assault to the chain of command and to law enforcement.

Appellant told medical personnel at the hospital that she had been raped the evening before and asked to have a rape kit done. Hospital personnel notified civilian law enforcement, who responded to the hospital.

During the following days and weeks, as law enforcement continued to investigate the fabricated violent sexual assault, Appellant made several false statements about what had occurred, who her assailant was, and that she had been impregnated by her assailant. She presented a falsified positive pregnancy test to support her claim of being impregnated. She also asked the Airman with whom she had consensual intercourse to lie about their activities that night.

In addition, Appellant purchased and used marijuana and "Spice" on multiple occasions in July, August, and September 2013. She drove on base after her driving privileges had been revoked following her receipt of punishment under Article 15, UCMJ, 10 U.S.C. § 815, for driving under the influence. Immediately after her commander restricted her to base, Appellant broke restriction and unsuccessfully attempted to get a fellow Airman to assist.

Additional facts necessary to resolve the assignments of error are included below.

*Providence of Plea*

Appellant argues that her plea of guilty to soliciting another to aid in her breaking restriction was improvident. We review a military judge's acceptance of a guilty plea for an abuse of discretion and questions of law arising therefrom de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). To prevail on appeal, Appellant has the burden to demonstrate "a substantial basis in law and fact for questioning the guilty plea." *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)) (internal quotation marks omitted). The "mere possibility" of a conflict between the accused's plea and statements or other evidence in the record is not a sufficient basis to overturn the trial results. *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting *Prater*, 32 M.J. at 436) (internal quotation marks omitted). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 40 C.M.R. 247, 250–51 (C.M.A. 1969)). "[W]e examine the totality of the circumstances of the providence inquiry, including the stipulation of fact, as well as the relationship between the accused's responses to leading questions and the full range of the accused's responses during the plea inquiry." *United States v. Nance*, 67 M.J. 362, 366 (C.A.A.F. 2009).

The specification to which Appellant pled guilty alleged that she wrongfully solicited Airman Basic (AB) LL "to aid in the restriction breaking of [Appellant], to wit: [Appellant], while restricted to the limits of Keesler Air Force Base, Mississippi, asked [AB LL] to sponsor [Appellant] onto Keesler Air Force Base, Mississippi," which was prejudicial to good order and discipline.

Appellant told the military judge, during the plea inquiry as well as in her 19-page stipulation of fact, that immediately after her commander restricted her to base, Appellant sent a text message to AB LL asking AB LL to meet Appellant at the gate, drive her through the gate, and scan AB LL's Common Access Card (CAC) to get Appellant back onto the base without the gate guards becoming aware of her true identity. Appellant also told AB LL that she "didn't care about base restrictions," or words to that effect.

Appellant further stipulated that when she asked AB LL to let her use her CAC, she specifically intended that AB LL be a principal[1] in the commission of the offense of breaking restriction, and also that she "wanted AB [LL] to help her get off base and back on undetected so that she could get away with breaking restriction." She also told the military judge that her plan to break restriction specifically included being able to return to base undetected.

Before accepting Appellant's guilty plea to this offense, the military judge sua sponte questioned whether AB LL could have legally aided in Appellant's breaking restriction if Appellant had already left the base (and thus broken restriction) before AB LL would have driven Appellant back onto base. In response, trial defense counsel noted that the solicitation occurred before the actual breaking of the restriction and that "if someone aids and abets during the AWOL, even though the AWOL was already committed, that still makes someone a principal in the act."

The military judge discussed this issue with Appellant. He summarized the positions of both trial and defense counsel and specifically asked whether Appellant agreed that her conduct met the legal definitions he provided. She replied in the affirmative. The military judge asked about the importance of getting back onto base in relation to Appellant's plan to break restriction:

> [Military Judge:] [Y]ou and Airman [LL] had the specific intent that she would assist you in breaking the restriction. The government's theory is that she did so and that intent was in that because the breaking restriction included all of the elements of getting off base and getting back on base undetected. In other words, you weren't trying to get caught. [Your] intent was to break restriction and not get caught."
>
> [Appellant:] Yes, Your Honor.
>
> [Military Judge:] Is that a fair statement?
>
> [Appellant:] Yes, Your Honor.
>
> [Military Judge:] All right. So do you have any questions about any of that?
>
> [Appellant:] No, Your Honor.

---

[1] Article 77, UCMJ, 10 U.S.C. § 877.

Appellant now claims that the military judge abused his discretion in accepting the plea of guilty to this offense because the offense of breaking restriction occurred when Appellant departed the installation. She asserts that the proper characterization of her conduct would be an attempt to cover up her misconduct.

We see no substantial basis for questioning the plea. A fair reading of Appellant's stipulation of fact and statements to the military judge suggests that getting back onto base undetected was an integral part of her plan to break restriction. The military judge correctly instructed Appellant on the law applicable to principal liability under Article 77, UCMJ, 10 U.S.C. § 877. Appellant was present when the trial counsel, trial defense counsel, and military judge discussed the relevant law and how it applied to the facts of her case. On more than one occasion, she indicated her understanding of the legal principles involved and stipulated that her conduct met those principals. Moreover, we are aware of no prior cases holding that the offense of breaking restriction cannot be a continuing offense. The military judge did not abuse his discretion in accepting Appellant's guilty plea.

*Sentencing Argument*

Appellant argues that the trial counsel's sentencing argument contained several references to the effect Appellant's false claims of rape would have on true rape victims and, with no direct evidence of that in the record, was therefore improper. She did not object to the argument at trial.

Whether argument is improper is a question of law we review de novo. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citing *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011)). Because trial defense counsel failed to object to the argument, we review for plain error. *Id.* To establish plain error, Appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)) (internal quotation marks omitted).

"[T]rial counsel is at liberty to strike hard, but not foul, blows." *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Trial counsel is limited to arguing the evidence in the record and the inferences fairly derived from that evidence. *See United States v. Paxton*, 64 M.J. 484, 488 (C.A.A.F. 2007); *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993). Whether or not the comments are fair must be resolved when viewed within the entire court-martial. *United States v. Gilley*, 56 M.J. 113, 121 (C.A.A.F. 2001). It is appropriate for counsel to argue the evidence, as well as all reasonable inferences fairly derived from such evidence. *United States v. Nelson*, 1 M.J. 235, 239 (C.M.A. 1975).

Appellant identified five separate passages in trial counsel's argument that she claims "focus on the impact Appellant's conduct had on real rape victims." In all but one, however, trial counsel's argument was focused on Appellant's conduct, its impact on the Air Force, and *Appellant's* view of and consideration for victims of sexual assault. We find nothing improper in these arguments.

In the fifth, trial counsel argued:

> Your Honor, the accused's lies, her drug use, and the extent of her manipulation are extremely serious in this case. She made a false report of sexual assault. What are all the airmen who have heard her claims, her false statements, what are they going to think the next time they receive a report of sexual assault? How is the next victim of sexual assault going to feel coming forward hoping she'll be believed. This accused didn't think about any of that. Victims need the support and the services that the Air Force so rightfully provides them. This accused exploited all of those things. This accused's conduct has been willful, it's been repeated, and no rehabilitative effort has worked.

This passage contains two references to other Airmen. The first referred to those who have heard of Appellant's false claims of rape. The standard sentencing instructions contained in the Military Judges' Benchbook[2] tell court-martial members that, when determining a sentence, they may consider the deterrent effect of a sentence upon those who know of an accused's crimes. The second was trial counsel's argument that Appellant did not consider how her false claims of rape might affect an actual sexual assault victim's decision to report her assault. When viewed in context, this argument was focused on Appellant's thoughts and behavior and not directly upon the actions of future sexual assault victims.

As we conclude that none of the cited arguments were error, we find no material prejudice to any substantial right of Appellant. Moreover, assuming arguendo that the reference to future sexual assault victims argued facts not in evidence and was not an inference fairly derived from the record, the sentencing authority was a military judge sitting alone. "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *Erickson*, 65 M.J. at 225. Our superior court has also recognized, "As part of this presumption we further presume that the military judge is able to distinguish between proper and improper sentencing arguments." *Id*.

---

[2] Department of the Army Pamphlet 27–9, *Military Judges' Benchbook*, ¶ 2-5-21 (10 September 2014).

*Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court