# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

UNITED STATES, Appellee
v.
Specialist CHRISTOPHER B. MAXWELL
United States Army, Appellant

ARMY 20180542

Headquarters, 1st Cavalry Division
Douglas K. Watkins and G. Bret Batdorff, Military Judges
Colonel Emily C. Schiffer, Staff Judge Advocate

For Appellant: Captain Zachary Gray, JA; Robert Feldmeier, Esquire (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig Schapira, JA; Major Joshua Banister, JA (on brief).

30 March 2020

------------------------------------
SUMMARY DISPOSITION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

Appellant asserts his plea of guilty to two specifications of aggravated assault was improvident because he made statements during his providence inquiry that he acted in self-defense.[1] As discussed below, we disagree.

---

[1] A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of aggravated assault and one specification of wrongful use of a controlled substance, in violation of Articles 128 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 912a [UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for six years, and reduction to the grade of E-1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for five years, and reduction to the grade of E-1.

## BACKGROUND

Appellant's providence inquiry to aggravated assault spanned three separate sessions. The military judge accepted his guilty plea at the last session.

Appellant went to a club to celebrate a friend's birthday. Towards the end of the evening, one of appellant's friends got into an argument with a stranger in the parking lot at the front of the club. Appellant "jumped in" to help. The stranger got upset, pulled out a pistol, pointed it at appellant, and "pistol whipped" appellant across the jaw. The stranger and his friends continued to beat appellant until he lost consciousness. When appellant regained consciousness, he ran to his car, retrieved an AR-15 rifle from his trunk, loaded the rifle, and returned to the location where he had been assaulted. As appellant ran to and from his car, he shouted, "Ima [sic] kill a mother fucker right now," and, "I got a gun, get the fuck out of my way." Appellant asked a friend, "[w]here they at[?]" referring to the strangers who assaulted him. The friend told appellant that they had left.

Appellant's initial testimony regarding what happened after loading his rifle and returning to the front of the club creates the current controversy. Appellant initially stated he saw "two human-figured objects coming towards me and pointing at me." Appellant further added, "I could not identify what they were pointing at me with." Appellant thought the two individuals could have been the strangers who had just assaulted him. Appellant raised his rifle at them. By the time appellant realized the "two human-figured objects" were police officers, they had already shot him.

Based on this testimony, the military judge explained to appellant the affirmative defense of self-defense. Both appellant and his defense counsel asserted self-defense did not apply but the military judge directed a five-day recess for appellant to further discuss his case with his defense counsel.

At the beginning of the second session, the military judge stated he had reviewed the entire providence inquiry from the first session and "[a]fter doing so the court determined . . . it could not, in accordance with the law and rules applicable to trials by court-martial, accept the accused's plea of guilty" to the aggravated assaults. Appellant's defense counsel then advised the military judge that appellant desired to "clarify, change, and elaborate upon some of his statements;" he had been very nervous at the initial session; defense counsel and appellant did not believe self-defense applied, and he still desired to plead guilty. After these assertions the military judge, who had another trial scheduled for that day, rescheduled appellant's guilty plea to a later date.

At the final session, appellant testified, again, regarding the underlying facts of the aggravated assaults. This time, appellant stated when he regained consciousness, "more of [his] pride was hurt than [he was] physically hurt."

Appellant thought, "[i]f [the stranger] could pull out a pistol and do that to him in public, he was going to show [the stranger] that he had a bigger weapon." After retrieving his rifle, appellant's friend told him the strangers had left. Appellant testified he felt "angry," "enraged," and "embarrassed . . . the strangers just did that to me, left, and got away with it."

As to self-defense not applying in his case, appellant stated:

> [A]t that point, it wasn't even about [the strangers] anymore because I knew that there was nothing I could do about it there. They had already left. But here I am standing in public and everybody's looking at me and laughing. And the embarrassment and my pride and all, so I still felt like there was more that I could do to reduce or eliminate the shame that I just went through. So I was still asking where they were at [sic] acting like I was looking for them which [sic] I knew they had already left. I turned around and saw two people pointing at me in a way that it seemed like they were laughing at me. . . . [T]hat hurt even more so I raised my weapon at them and I was asking them, 'Where they at? Where the people at?' knowing fully [sic] well that they had already left . . . . [A]t the time, I did not want to go viral on social media for something especially as stupid as that, as being knocked out in public. I'm the oldest among my friends and they look up to me a lot and when that happened that crushed a whole lot for me. Basically, I was just trying to save face.

The military judge then confronted appellant with the specific portions of his earlier testimony that were inconsistent with his final testimony. After appellant specifically disavowed his earlier statements, the military judge accepted the plea.

## LAW AND ANALYSIS

We review a military judge's acceptance of a guilty plea for an abuse of discretion. *See United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). If an accused sets up a matter inconsistent with his plea of guilty, the military judge must resolve the inconsistency or reject the plea. *See United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014)); UCMJ art. 45(a). A military judge abuses his discretion if he fails to obtain from an accused an adequate factual basis to support his plea. *See United States v. Nance*, 67 M.J. 362, 365 (C.A.A.F. 2009); *United States v. Care*, 18 C.M.A. 535, 541, 40

C.M.R. 247, 253 (1969); Rule for Courts Martial 910(e) [R.C.M.]. An accused's guilty plea should not be set aside on appeal unless there is a substantial basis in law or fact for questioning the plea. *See Inabinette*, 66 M.J. at 322; *see also United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

Self-defense is a complete defense to aggravated assault "[i]f an individual apprehends on reasonable grounds that grievously bodily harm or death is about to be wrongfully inflicted to his or her person, then the individual may use such force as is appropriate for the circumstances, including deadly force." *United States v. Behenna*, 71 M.J. 228, 232-33 (C.A.A.F. 2012); *see also* R.C.M. 916(e).[2]

Here, appellant's initial testimony set up a matter inconsistent with his plea: that he acted in self-defense when he raised his rifle at the two individuals. At the second session, the military judge correctly advised appellant that his plea was going to be rejected. In light of the military judge's notification, appellant and his defense counsel disclaimed the existence of self-defense and averred a continued desire to plead guilty. During the final session, appellant stated he was not acting in self-defense when he raised his rifle at two police officers. As we detail below, the military judge confronted appellant with his initial specific statements alluding to self-defense. Appellant specifically disavowed each statement.

First, the military judge stated to appellant:

> I think the key difference between what you told me [at the initial session] and what you told me [today] is as follows: [at the initial session], you led me to believe that you unexpectedly turned around and were faced with the surprise of these two officers at the time, these two human-figured objects pointing at you. That's not kind of what you shared with me today. Today, I think you said you saw them and you were walking towards them; is that right?

Appellant replied, "I turned around while they were pointing at me, I raised my rifle and I stepped forward. I was stepping towards them."

The military judge then asked, "[a]nd you said something about them laughing at you or you thought they were laughing at you?" Appellant then repudiated that he felt threatened by the two individuals by stating plainly, "[t]hey

---

[2] On numerous occasions throughout the three sessions, the military judge advised appellant on this self-defense instruction and the applicable definitions. Appellant consistently stated he understood the defense.

were pointing at me in such a manner that I felt they were laughing at me." *See, e.g., United States v. Michener*, 46 C.M.R. 427, 429 (A.C.M.R. 1972) (an inconsistent statement requires the rejection or withdrawal of a plea of guilty unless the accused repudiates the inconsistent statement).

Next, the military judge, again, explained the definition of self-defense and asked appellant, "[a]t the moment you raised your rifle and pointed it at the officers, did you fear that you were about ready to be shot or killed or injured in any way?" Appellant continued to disavow any claim of self-defense replying he did not fear the two individuals. Appellant stated he saw the two "human-figured objects" and raised his weapon at them. He did not know they were police officers "[a]t the time, [and they were] just basically people that [sic] were laughing at me."

The military judge further clarified with appellant that he never saw weapons in the hands of the "human-figured objects." Lastly, the military judge confronted appellant with his earlier testimony that, "I wanted to be ready to shoot at them in case I got shot at." The military judge asked appellant if that was accurate. Appellant stated, "[t]hat wasn't correct, Your Honor."

The military judge appropriately identified and then clarified the inconsistencies in appellant's providence inquiry. Appellant provided detailed statements, beyond mere conclusions of law, disavowing any claim of self-defense. *See, e.g., United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996) (citation omitted). Accordingly, we find the military judge did not abuse his discretion in accepting appellant's guilty plea.

## CONCLUSION

On consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Senior Judge BURTON and Judge RODRIGUEZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

5