*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

───────────────

### UNITED STATES
Appellee

**v.**

### Conner B. HISER, Private First Class
United States Army, Appellant

### No. 21-0219
Crim. App. No. 20190325

Argued November 17, 2021—January 13, 2022

Military Judge: Teresa L. Raymond

For Appellant: *Captain Carol K. Rim* (argued); *Daniel S. Conway*, Esq. (on brief); *Major Alexander N. Hess* and *Scott R. Hockenberry*, Esq.

For Appellee: *Captain Jennifer A. Sundook* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Craig Schapira, Lieutenant Colonel Wayne H. Williams*, and *Captain A. Benjamin Spencer* (on brief); *Major Mark T. Robinson* and *Captain Christopher K. Wills*.

Judge MAGGS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge HARDY, and Senior Judge COX, joined.

───────────────

Judge MAGGS delivered the opinion of the Court.

Appellant contends that the military judge abused her discretion in accepting his guilty plea to three specifications of wrongfully broadcasting intimate visual images in violation of Article 117a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 917a (2018). According to Appellant, the providence inquiry in this case failed to establish that the victim was "identifiable" and also failed to establish a "connection to a . . . military environment" as required by Article 117a(a), UCMJ. The record, however, does not support Appellant's contentions. Because we see no substantial basis in law or fact for questioning the plea, we affirm the judgment of the United States Army Court of Criminal Appeals (ACCA).

## I. Background

The three Specifications of Charge III allege violations of Article 117a, UCMJ:

> In that Private First Class (E-3) Conner B. Hiser, U.S. Army, did, at or near Fort Drum, New York, on or about [May 5, 2018, for Specification 1; May 6, 2018, for Specification 2; and May 9, 2018, for Specification 3], knowingly, wrongfully, and without the explicit consent of Specialist [V.G.], who was at least 18 years of age when the visual image was created and is identifiable from the visual image and from [the] information displayed in connection with the visual image, when he knew or reasonably should have known that the visual image was made under circumstances in which Specialist [V.G.] retained a reasonable expectation of privacy regarding any broadcast of the visual image, and when he knew or reasonably should have known that the broadcast of the visual image was likely to cause harassment, intimidation, and emotional distress for Specialist [V.G.], which conduct, under the circumstances, had a reasonably direct and palpable connection to a military mission or military environment.

Appellant and the Government entered into a stipulation of fact relevant to the Article 117a, UCMJ, specifications. The stipulation recounts that Appellant was married to Specialist (SPC) V.G. at the time of the charged offenses. The stipulation further provides in relevant part:

> 14. On 8 April 2018, SPC [V.G.] looked at the Accused's phone and noticed that he uploaded a video to the porn website Pornhub.com (Pornhub). The video was roughly three minutes long and depicted SPC [V.G.] and the Accused engaging in sexual intercourse. When SPC [V.G.] confronted the Accused, he explained that it had been on the internet for a few days and he posted it to make extra money. SPC [V.G.] told him to take down the video. The Accused complied and SPC [V.G.] later confirmed that the video was removed from the website.
>
> 15. On 10 May 2018, SPC [V.G.] was reflecting on everything that happened in their relationship and remembered that the Accused had posted a video on Pornhub without her permission in April 2018. SPC [V.G.] had a bad feeling that the Accused might do that again. She checked Pornhub and saw that the

Accused had wrongfully broadcasted three (3) videos depicting sexually explicit conduct involving her. The three videos are different segments of the same original video. SPC [V.G.] was over 18 years of age when the original video was created. SPC [V.G.] consented to the creation of the video on the condition that the Accused not post, share, or show the video to any third party. SPC [V.G.] did not consent, in any way, to the Accused posting these videos on Pornhub.

16. The Accused knew, or reasonably should have known, that SPC [V.G.] retained a reasonable expectation of privacy regarding any broadcast of the videos. The Accused also knew, or reasonably should have known, that the broadcast of the videos was likely to cause harassment, intimidation, and emotional distress for SPC [V.G.].

17. . . . The Accused posted all three videos on Pornhub using his personal Pornhub profile. The Accused's profile name is "cbhiser02" and contains a picture of the Accused. The video posted on 5 May 2018 is titled "[expletive deleted] my wife," the video post on 6 May 2018 is titled "[expletive deleted] my wife's [expletive deleted]," and the video posted on 9 May 2018 is titled "Quickie with the wife."

18. The video titled "[expletive deleted] my wife" is approximately one minute and forty[-]three seconds long and depicts the Accused's penis penetrating SPC [V.G.'s] vagina from behind. The video is filmed from the Accused's perspective. The video titled "[expletive deleted] my wife's [expletive deleted]" is approximately three minutes long and depicts the Accused's penis penetrating SPC [V.G.'s] vagina from behind. The beginning of the video is filmed from the Accused's perspective, later the camera is moved and the remainder of the video is filmed from underneath SPC [V.G.]. The video titled "Quickie with the wife" is approximately 38 seconds long and depicts the Accused's penis penetrating SPC [V.G.'s] vagina from behind. The video is filmed from the Accused's perspective.

19. SPC [V.G.'s] face is not visible in any video. However, the video titled "[expletive deleted] my wife" shows SPC [V.G.'s] hair in a military style bun and the video titled "quickie with the wife" shows SPC [V.G.'s] wedding ring on her left ring finger.

20. The Accused posted the videos online "as revenge" because he believed SPC [V.G.] might be romantically involved with members of his unit. The Accused told [agents of the Criminal Investigation Command] that he posted the videos "roughly between 30 April and 5 May 2018." The Accused's conduct had a reasonably direct and palpable connection to a military mission or military environment. In conjunction with the Accused's profile name, "cbhiser02" other Soldiers could have reviewed the video and known SPC [V.G.] was depicted, particularly as her distinctive, military-style bun was visible. At the time of the offenses, SPC [V.G.'s] legal [last] name was . . . Hiser. She was, and is, an active duty Soldier. SPC [V.G.] and PFC Hiser were well-known as a dual-military couple within the Fort Drum military environment.

Based on the entirety of the stipulation of fact and Appellant's answers during the providence inquiry, a military judge sitting as a general court-martial found Appellant guilty of the three specifications of wrongfully broadcasting intimate visual images quoted above, in violation of Article 117a, UCMJ, 10 U.S.C. § 917a, and also of one specification of disrespecting a superior commissioned officer, one specification of aggravated assault, one specification of assault consummated by a battery, and one specification of communicating a threat, in violation of Articles 89, 128, and 134, UCMJ, 10 U.S.C. §§ 889, 928, 934 (2018). The military judge sentenced Appellant to a reduction to the grade of E-1, confinement for thirty-nine months, and a dishonorable discharge from the service. In accordance with the terms of the pretrial agreement, the convening authority approved only so much of the adjudged sentence as provided for a reduction to the grade of E-1, confinement for three years, and a dishonorable discharge. The ACCA affirmed the findings of guilty and sentence. *United States v. Hiser*, No. ARMY 20190325 (A. Ct. Crim. App. Feb. 10, 2021).

We granted review of the following question: "Whether the military judge abused her discretion by accepting Appellant's guilty plea to a violation of Article 117a, UCMJ, when Appellant posted intimate videos of a person under circumstances where the person was not readily identifiable and there was no reasonable connection to the military environment."

*United States v. Hiser*, 81 M.J. 302, 303 (C.A.A.F. 2021) (order granting review).

## II. Standards of Review

Three standards of review are relevant to this appeal. One standard of review applies to the stipulation of fact. Under Rule for Courts-Martial (R.C.M.) 811(e), "[u]nless properly withdrawn or ordered stricken from the record, a stipulation of fact that has been accepted is binding on the court-martial and may not be contradicted by the parties thereto." Because the stipulation of fact quoted above has not been withdrawn or stricken, we accept the assertions within it as true. *See United States v. Nance*, 67 M.J. 362, 363 (C.A.A.F. 2009).

Another standard of review applies to the military judge's acceptance of Appellant's guilty plea. Under R.C.M. 910(e), "[t]he military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." We review a military judge's acceptance of a guilty plea for abuse of discretion. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991). Applying this standard, we must uphold a guilty plea unless there is "a 'substantial basis' in law and fact for questioning" the plea. *Id.*

A third standard of review applies to the interpretation of the terms "identifiable" and "connection to a . . . military environment" in Article 117a(a), UCMJ. The meaning of these terms is a question of statutory interpretation. This Court reviews matters of statutory interpretation de novo. *United States v. Gay*, 75 M.J. 264, 267 (C.A.A.F. 2016).

## III. Discussion

Congress enacted Article 117a, UCMJ, in 2017 to address the "[w]rongful broadcast or distribution of intimate visual images." 10 U.S.C. § 917a (2018) (enacted by National Defense Authorization Act of 2018, Pub. L. No. 115-91, § 533(a), 131 Stat. 1283, 1389 (2017). This prolix provision, which this Court has not previously interpreted, is complicated. Article 117a(a), UCMJ, describes the prohibited offense in a single

sentence of more than 300 words.[1] For the Article 117a, UCMJ, specifications charged in this case, four elements are

---

[1] Article 117a(a), UCMJ, provides:

Wrongful broadcast or distribution of intimate visual images

(a) PROHIBITION.—Any person subject to this chapter—

(1) who knowingly and wrongfully broadcasts or distributes an intimate visual image of another person or a visual image of sexually explicit conduct involving a person who—

(A) is at least 18 years of age at the time the intimate visual image or visual image of sexually explicit conduct was created;

(B) is identifiable from the intimate visual image or visual image of sexually explicit conduct itself, or from information displayed in connection with the intimate visual image or visual image of sexually explicit conduct; and

(C) does not explicitly consent to the broadcast or distribution of the intimate visual image or visual image of sexually explicit conduct;

(2) who knows or reasonably should have known that the intimate visual image or visual image of sexually explicit conduct was made under circumstances in which the person depicted in the intimate visual image or visual image of sexually explicit conduct retained a reasonable expectation of privacy regarding any broadcast or distribution of the intimate visual image or visual image of sexually explicit conduct;

(3) who knows or reasonably should have known that the broadcast or distribution of the intimate visual image or visual image of sexually explicit conduct is likely—

(A) to cause harm, harassment, intimidation, emotional distress, or financial loss for the person depicted in the intimate visual image or visual image of sexually explicit conduct; or

relevant. First is that the accused "knowingly and wrongfully broadcast[ed] . . . a visual image of sexually explicit conduct involving a person *who . . . is identifiable from the . . . visual image . . . or from information displayed in connection with the . . . visual image.*" *Id.* § 917a(a)(1)(B) (emphasis added). Second is that the accused "[knew] or reasonably should have known that the . . . visual image of sexually explicit conduct was made under circumstances in which the person depicted in the . . . visual image of sexually explicit conduct retained a reasonable expectation of privacy." *Id.* § 917a(a)(2). Third is that the accused "[knew] or reasonably should have known that the broadcast . . . of the . . . visual image of sexually explicit conduct is likely . . . to cause harm, harassment, intimidation, emotional distress, or financial loss for the person depicted." *Id.* § 917a(a)(3)(A). Fourth is that the accused's "conduct, under the circumstances, had *a reasonably direct and palpable connection to a military mission or military environment.*" *Id.* § 917a(a)(4) (emphasis added).

This appeal concerns the first and fourth of these elements. With respect to the first element, Appellant contends that "in the circumstances captured within the videos appellant [and] his wife are not readily identifiable." With respect to the fourth element, Appellant argues that "there was no reasonable connection to the military environment." We disagree with both of Appellant's arguments and conclude that there is no substantial basis in law and fact for questioning Appellant's guilty plea.

---

> (B) to harm substantially the depicted person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships; and

> (4) whose conduct, under the circumstances, had a reasonably direct and palpable connection to a military mission or military environment,

> is guilty of wrongful distribution of intimate visual images or visual images of sexually explicit conduct and shall be punished as a court-martial may direct.

10 U.S.C. § 917a(a) (2018). Definition of several of these terms appear in Article 117a(b)(1)–(7). *Id*. § 917a(b)(1)–(7).

A. Whether SPC V.G. Was "Identifiable"

Appellant's first contention is that the military judge abused her discretion by accepting his guilty plea because SPC V.G. was not identifiable.[2] Appellant asserts that she was not identifiable because the videos "capture her from her back side [sic]" and "her face is not shown." Appellant further argues that even though SPC V.G.'s wedding ring and hair bun are visible, they are "not unique nor sufficiently specific" to make SPC V.G. identifiable. In addition, Appellant contends that SPC V.G. was not identifiable from the information displayed in connection with the photograph because the videos used "the general reference to 'my wife' in the title (as opposed to *her* name)."

Article 117a(a)(1)(B), UCMJ, requires the victim of a wrongful broadcast to be "identifiable from the . . . visual image . . . or from information displayed in connection with the . . . visual image." Given that this appeal arises from a guilty plea, we need not settle all possible questions about the meaning of this provision in order to assess Appellant's argument. Instead, based on the applicable standards of review, we need only determine whether the military judge had a substantial basis in law and fact for concluding that SPC V.G. was identifiable. Future contested cases can settle interpretative issues that later might arise.

Based on the stipulation of facts and the providence inquiry, we conclude that the military judge did not abuse her discretion in determining that SPC V.G. was identifiable for two reasons. First, the military judge had a substantial basis in fact for concluding that SPC V.G. was identifiable because SPC V.G. actually recognized herself when she saw the postings and videos. As quoted above, the parties stipulated that SPC V.G. "checked Pornhub and saw that the Accused had wrongfully broadcasted three (3) videos depicting sexually explicit conduct involving her." *See People v. Johnson*, 184 Cal. Rptr. 3d 850, 865 (Cal. Ct. App. 2015) (holding that a victim

---

[2] Although Appellant argues in some instances that SPC V.G. was not "readily identifiable," the modifier "readily" does not appear in the text of Article 117a(a)(1)(B), UCMJ. We therefore construe Appellant's argument to mean that his wife was not "identifiable."

was "identifiable" under a similar California statute when the victim identified herself).

Second, even putting SPC V.G.'s self-recognition aside, the military judge would have a substantial basis in fact for concluding that SPC V.G. was identifiable from a combination of the visual images in the videos and the information displayed in connection with the videos. In posting the videos, Appellant—PFC Conner B. Hiser—adopted the username "cbhiser02," which contained his first and middle initials and his last name. He further included a photograph of his face in his profile. The titles of the videos described the woman in the videos as Appellant's "wife," who at the time was SPC V.G. Her last name at the time was also Hiser. Although SPC V.G. might not have been identifiable solely by her wedding ring and hair bun, the ring and hair bun were consistent with SPC V.G.'s usual appearance. They therefore reinforced the conclusion that the "wife" of "cbhiser02" depicted in the videos was SPC V.G.

In reaching the conclusion that the military judge did not abuse her discretion, we recognize that Appellant has advanced a specific legal argument about how courts should construe Article 117a(a)(1)(B), UCMJ. Specifically, Appellant contends that the Court should decide whether a person is "identifiable" from the perspective of "somebody of the general public." Oral Argument at 13:19–13:23, *United States v. Hiser*, No. 21-0219 (C.A.A.F. Nov. 17, 2021). Under this view, if a member of the general public could not identify SPC V.G. from the videos and information posted with them, then she is not "identifiable" for the purpose of Article 117a(a)(1)(B), UCMJ, even if SPC V.G. could identify herself or even if others who actually knew SPC V.G. and Appellant could identify her. The text of Article 117a(a)(1)(B), however, does not support this proposed construction. Because the article requires that the person depicted in an image be "identifiable" without further qualification, it provides no basis for requiring a person to be identifiable by "somebody of the general public." Based on all of these considerations, we see no substantial basis in law or fact for questioning whether Appellant was identifiable.

### B. Connection to a Military Environment

Article 117a(a)(4), UCMJ, requires that the accused's "conduct, under the circumstances, [have] a reasonably direct and palpable connection to a . . . military environment." Relying on our decision in *United States v. Wilcox*, 66 M.J. 442 (C.A.A.F. 2008), Appellant contends that the connection element is satisfied only if the broadcasted images at issue were "directed at servicemembers" or were "likely to reach servicemembers." Oral Argument at 0:48–1:07, *United States v. Hiser*, No. 21-0219 (C.A.A.F. Nov. 17, 2021). Appellant contends that here "[t]he only evidence that anyone else even saw the videos was that SPC VG discovered them when she was snooping through appellant's phone." Appellant further contends that "there is no evidence [soldiers] were aware of, or would think to look for, appellant's profile on PornHub."

We disagree with these contentions for two reasons. First, and fundamentally, Appellant confuses our review of a guilty plea with our review of findings following a trial. When an accused has pleaded guilty, we do not review the "evidence" for legal sufficiency for the simple reason that there is no evidence when there is no trial. Instead, when the accused pleads guilty, the military judge shall "mak[e] such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e). This Court's task on review, as explained above, is only to determine from any stipulated facts and from the providence inquiry whether the military judge abused his or her discretion in complying with this rule. In so doing, we simply must determine whether Appellant's guilty plea has a substantial basis in law and fact.

Second, we disagree with Appellant's contention that the requirement of a "connection to a . . . military environment" in Article 117a(a)(4), UCMJ, is satisfied only if broadcasted images are "directed at" or "likely to reach" members of the military. In ordinary language, the word "connection" means "a coming into or being put in contact." *Webster's Third New International Dictionary of the English Language Unabridged* 481 (1986). Based on this ordinary meaning, we conclude that a "connection" may be established if the broadcasted images actually do reach a servicemember—that is, a servicemember is "put in contact" with the images—regardless of whether the accused specifically directed the images at

the military and regardless of how likely the images were to reach the military.[3] In this case, the parties stipulated that SPC V.G. is a member of the military and that the images reached her. The connection requirement is therefore met. And this connection could hardly have been more "direct and palpable" because Appellant posted the videos on the Pornhub website, and SPC V.G. soon thereafter found the videos on the same website.

The *Wilcox* decision is not controlling on this specific issue. In *Wilcox*, the appellant was charged with a violation of Article 134, UCMJ, for "wrongfully advocat[ing] anti-government and disloyal sentiments, and encourag[ing] participation in extremist organizations while identifying himself as a 'US Army Paratrooper' on an America OnLine [AOL] Profile and advocat[ing] racial intolerance by counseling and advising individuals on racist views" when "under the circumstances, the [appellant's] conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit to the armed forces." 66 M.J. at 443–44 (alterations in original) (internal quotation marks omitted). This Court determined that the evidence was legally insufficient to establish the "good order and discipline" or "service discrediting" elements because "no evidence was produced that the profiles were directed at other members of the military, or that any military member other than the investigators stumbled upon them or was likely to do so." *Id.* at 451.

This case is distinguishable. Article 117a(a)(1), UCMJ, unlike Article 134, UCMJ, does not include an element that the conduct be prejudicial to good order and discipline or that it discredit the military. In addition, in this case, SPC V.G. was a member of the military and she actually did find the videos. Appellant specifically stated he uploaded the video to embarrass SPC V.G., and recognized that other members of her command could see them and think "this is degrading to the U.S. military that Soldiers are uploading this kind of behavior and their intimate lives on to social media or the internet." Appellant stipulated that there was a negative impact

---

[3] We express no opinion on whether a "connection to a . . . military environment" may be established in other ways because that issue is not before this Court.

on the military community at Fort Drum. Finally, unlike the investigators in *Wilcox* who presumably were not affected by the controversial statements they uncovered, SPC V.G. was (according to the stipulated facts) "likely" to suffer "emotional distress" because of the broadcasting of the videos. Under the plain language of Article 117a(a)(4), UCMJ, nothing more is needed to establish a "direct and palpable connection to a . . . military environment."

## C. Other Contentions

We note three other arguments that Appellant has made. The first argument lacks merit. Appellant contends that a court-martial cannot use "a single factual basis . . . to satisfy two elements" of Article 117a(a), UCMJ. Accordingly, Appellant argues, the court-martial could not consider the effects of the video on SPC V.G. for elements in Article 117a(a)(3), UCMJ, and also Article 117a(a)(4), UCMJ. We reject this contention. Evidence sometimes may satisfy two elements of an offense. *See, e.g.*, *Pasquantino v. United States*, 544 U.S. 349, 355 (2005) (holding that evidence of "[p]etitioners' smuggling operation" satisfied two elements of the federal wire fraud statute).

The second and third arguments are not properly before this Court. Appellant contends that Article 117a(a), UCMJ, has "[c]onstitutional implications" that this Court must consider. Citing *United States v. Williams*, 553 U.S. 285, 304 (2008), and other decisions, he questions whether Article 117a(a), UCMJ, gives persons of ordinary intelligence fair notice of what is prohibited. Appellant also contended at oral argument that there were some unresolved inconsistencies between what Appellant stated in the stipulation of fact and what the videos actually showed when they were introduced later at sentencing. We decline to reach these arguments because they are not within the scope of the granted issue and were not briefed by both parties. *See United States v. Guardado*, 77 M.J. 90, 95 n.1 (C.A.A.F. 2017) (declining to address an issue outside the scope of the granted issue).

## IV. Conclusion

The judgment of the United States Army Court of Criminal Appeals is affirmed.